UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| VISIBILITY CORPORATION, | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | CIVIL ACTION |
| | ) | NO. 10-12280-JGD |
| SCHILLING ROBOTICS, LLC, et al., | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OF DECISION AND ORDER
ON DEFENDANTS' MOTIONS TO COMPEL ARBITRATION
AND DISMISS OR STAY PROCEEDINGS**

October 25, 2011

DEIN, U.S.M.J.

## I. INTRODUCTION

In 1998, Visibility, Inc., the predecessor to plaintiff Visibility Corporation (collectively, "Visibility"),[1] entered into a software license agreement ("Agreement") with GEC Alsthom Schilling Robotics Systems, Inc. ("GEC Alsthom") pursuant to which Visibility granted GEC Alsthom the right to use certain of its computer software programs and related materials, including software that is registered with the United States Copyright Office (the "Software"). The Agreement contains an arbitration provision. It also contains a non-solicitation provision, which prohibits the parties from soliciting or hiring certain of each others' employees.

---

[1] The parties have not distinguished Visibility Corporation from its predecessor, Visibility, Inc., for purposes of the pending motions. Accordingly, this court has referred to those entities collectively as "Visibility."

In 2000, GEC Alsthom transferred the Software to defendant Alstom USA, Inc. ("Alstom") in connection with the merger of GEC Alsthom into Alstom, and in 2003, Alstom transferred the Software to defendant Schilling Robotics, LLC ("Schilling Robotics") in connection with Schilling Robotics' acquisition of assets from Alstom. In this action, Visibility claims that it did not consent to the assignment of rights under the Agreement, and that Alstom and Schilling Robotics have engaged in copyright infringement by accessing, using and copying the Software without Visibility's permission. Additionally, Visibility claims that Schilling Robotics unlawfully interfered with its contractual relations by recruiting and hiring one of Visibility's key employees even though Schilling Robotics knew or should have known about the non-solicitation provision contained in the Agreement.

The matter is presently before the court on the defendants' motions to compel arbitration (Docket Nos. 14 and 19), by which the defendants are seeking an order compelling the submission of Visibility's claims to arbitration pursuant to the arbitration clause of the Agreement and the Federal Arbitration Act, 9 U.S.C. § 1 et seq., and dismissing this action or, in the alternative, staying these proceedings pending arbitration. While it is undisputed that the Agreement contains an arbitration clause, Visibility contends that the motions must be denied because the defendants are not parties to the Agreement, and therefore lack standing to demand arbitration thereunder. Visibility further contends that arbitration is inappropriate in any event because its claims are unrelated to the Agreement and do not trigger operation of the arbitration clause.

For all the reasons detailed below, this court finds that questions of arbitrability, including the question as to whether a valid arbitration agreement exists between Visibility and the defendants, must be decided by an arbitrator.  This court also finds that the plaintiff's claims are sufficiently related to the Agreement to support the arbitrator's authority to decide whether the plaintiff's claims are arbitrable.  Accordingly, the defendants' motions to compel arbitration (Docket Nos. 14 and 19) are ALLOWED.  Because there is a possibility that the matter will be returned to this court for consideration on the merits, the case will be stayed pending a decision by the arbitrator as to the arbitrability of the dispute.  However, nothing herein shall preclude the defendants from filing a new motion to dismiss if the arbitrator finds that Visibility's claims are arbitrable.  The parties shall file a joint report with the court, by **December 30, 2011**, describing the status of the arbitration.

## II.  STATEMENT OF FACTS[2]

The following facts are relevant to the defendants' motions to compel arbitration.

Plaintiff Visibility develops, licenses, installs, supports and maintains computer software programs, including Software that is registered with the United States Copyright Office.  (Compl. ¶ 5).  Visibility alleges that it has expended substantial amounts of money and resources in order to develop, modify, improve and enhance the Software, and

---

[2] The facts are derived from (1) Visibility's Complaint ("Compl.") (Docket No. 1); (2) the Declaration of John Landon ("Landon Decl.") (Docket No. 16); (3) the Declaration of Tyler Schilling ("Schilling Decl.") (Docket No. 17); (4) the Declaration of Scott W. Pink ("Pink Decl.") (Docket No. 18); and (5) the Declaration of John Saint ("Saint Decl.") (Docket No. 25).

that it remains the sole proprietor of all of the rights, title and interest in the Software. (Id. ¶ 7).

## Visibility's Agreement with GEC Alsthom

On May 29, 1998, Visibility entered into a software licensing Agreement with GEC Alsthom. (Saint Decl. ¶ 2). The Agreement identifies Visibility as the "Licensor" and GEC Alsthom as the "User," and provides in relevant part that "Licensor grants to User, subject to the terms of this Agreement, the nonexclusive and nontransferable right to use the Licensed Software on the Equipment at the Location, solely for User's own internal business purposes." (Saint Decl., Ex. A ¶ 2.1). Visibility alleges that under the Agreement, GEC Alsthom was prohibited from lending, selling, giving, leasing, or disclosing the Software to any other entity without Visibility's express written approval. (Compl. ¶ 12). It also alleges that the prohibitions on the unauthorized use or disclosure of the Software survived the termination of the Agreement. (Id.).

The Agreement contains a non-solicitation provision, which provides as follows:

> Each of the Licensor and User agrees that it shall not solicit or hire, for the purpose of employment, the employees of the other who are directly associated with work related to the negotiation, performance, and/or administration of this Agreement, either as employees, independent contractors, or in any other capacity related to this Agreement and/or the subject matter hereof. This provision shall survive the termination of this Agreement for a period of two years.

(Saint Decl., Ex. A ¶ 10.1). It also contains an arbitration clause, which is set forth in an Addendum to the Agreement. (See id. at Addendum A ¶ 3). The arbitration clause

provides that "[a]ny dispute will be governed and settled by binding arbitration in accordance with the Expedited Commercial Arbitration Rules of the American Arbitration Association. The venue for such action will be Denver, Colorado." (Id.).

### Transfer of the Software to the Defendants

In August 2000, GEC Alsthom was merged into defendant Alstom, at which point GEC Alsthom ceased to exist. (Schilling Decl. ¶ 4). Visibility claims that it was unaware of the merger. (Compl. ¶ 14). It also claims that in connection with the merger, GEC Alsthom improperly transferred the Software to Alstom without Visibility's consent. (Id. ¶¶ 14, 17).

Several years later, in October 2003, Schilling Robotics acquired various assets from Alstom, including the Software and Alstom's rights under the Agreement. (Schilling Decl. ¶ 4). The parties dispute whether Visibility was aware of this development, and whether it consented to the assignment of rights to Schilling Robotics. Schilling Robotics has submitted evidence indicating that it notified Visibility about changes to its ownership in August 2003. (See id. ¶ 6 and Ex. B thereto). It also has submitted evidence showing that Visibility nevertheless continued to issue new licenses to Schilling Robotics authorizing its use of the Software, and to provide maintenance, support and professional services to Schilling Robotics with respect to the licensed Software. (Landon Decl. ¶¶ 6-10). Moreover, these agreements with Schilling Robotics continued to cite to the original contract with GEC Alsthom. (See id. ¶¶ 6, 9). However, Visibility contends that Schilling Robotics misled it into believing that Schilling Robotics

was the same entity as GEC Alsthom. (See Saint Decl. ¶ 6). The plaintiff further claims that it did not become aware that Schilling Robotics and GEC Alsthom were separate entities, and that Schilling Robotics would have therefore needed a separate license to use the Software, until August 2010. (Id. ¶¶ 4, 7). By its Complaint, Visibility claims that both defendants have engaged in copyright infringement by accessing, using and copying the Software without Visibility's permission. (Compl. at First Claim for Relief).

### Solicitation and Hiring of Paul Mayo

Visibility also claims that Schilling Robotics unlawfully interfered with its contractual relations by recruiting and hiring Paul Mayo despite Schilling Robotics' knowledge of the non-solicitation clause contained in the Agreement. (Id. at Second Claim for Relief). Mr. Mayo was employed by Visibility, pursuant to the terms of an employment contract, from about 1995 to April 30, 2010. (Saint Decl. ¶ 9). Throughout much of his employment, and up until the day of his departure, Mr. Mayo performed work for Schilling Robotics on behalf of Visibility. (Id. ¶ 10). Visibility alleges that in or about April 2010, Schilling Robotics encouraged Mr. Mayo to leave his job with the plaintiff and work for Schilling Robotics. (Compl. ¶ 30). Moreover, it has submitted evidence showing that Mr. Mayo began working as an employee of Schilling Robotics shortly after leaving his employment with Visibility, and that Visibility has lost clients and revenue as a result of Mr. Mayo's departure. (Saint Decl. ¶¶ 11-13).

The plaintiff alleges that Schilling Robotics acted unlawfully and in bad faith "by intentionally circumventing the terms of the Agreement in order to solicit and hire Mayo

without Visibility's knowledge or permission." (Compl. ¶ 34).  Specifically, Visibility claims that

> Schilling Robotics, as the purported assignee of GEC Alsthom Schilling's Agreement with Visibility, and as a party that intended to receive the benefits of the Agreement and to be bound by the Agreement's obligations, knew or should have known that the Agreement contained a clause prohibiting [the] parties to the Agreement from soliciting or hiring any of each other's employees associated with work related to the subject matter of the Agreement.

(Id. ¶ 43).  It further alleges that despite its knowledge, Schilling Robotics recruited and hired Mr. Mayo away from Visibility in order to avoid paying fees for Mr. Mayo's work.  (Id. ¶¶ 44-45).

### III. ANALYSIS

#### A. Arbitrability

The defendants have moved to compel arbitration pursuant to the arbitration clause of the Agreement and the Federal Arbitration Act, 9 U.S.C. § 1 et seq.  "[A]rbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit."  Intergen N.V. v. Grina, 344 F.3d 134, 142 (1st Cir. 2003) (quotations and citations omitted).  Therefore, "[a] party who attempts to compel arbitration must show that a valid agreement to arbitrate exists, that the movant is entitled to invoke the arbitration clause, that the other party is bound by that clause, and that the claim asserted comes within the clause's scope."  Id.

In the instant case, the parties dispute whether the defendants are able to satisfy the first two elements of this test.  The defendants assert that the arbitration clause of the

software license Agreement constitutes a valid agreement to arbitrate, and that they acquired the right to enforce the arbitration clause as a result of GEC Alsthom's merger into Alstom in 2000 and Schilling Robotics' acquisition of assets from Alstom in 2003. (See Schilling Robotics Mem. (Docket No. 15) at 6-7; Alstom Mem. (Docket No. 20) at 4). Visibility argues that no valid agreement to arbitrate exists between the parties in this case because the defendants were not signatories to Visibility's Agreement with GEC Alsthom, and they have provided no legal support for their claims that they acquired rights under the Agreement through the corporate transactions described above. (See Pl. Opp. Mem. (Docket No. 24) at 4-8). For the reasons that follow, this court finds that Visibility contracted to submit questions of arbitrability to the arbitrator rather than to the court, and that the question whether a valid arbitration agreement exists between Visibility and the defendants under the terms of the Agreement between Visibility and GEC Alsthom must be decided by an arbitrator.

### Authority to Decide Arbitrability

"[U]nder the Federal Arbitration Act, the *general* rule is that the arbitrability of a dispute is to be determined by the court." Apollo Computer, Inc. v. Berg, 886 F.2d 469, 472 (1st Cir. 1989). "Parties may, however, agree to allow the arbitrator to decide both whether a particular dispute is arbitrable as well as the merits of the dispute." Id. at 473. "Thus, where the parties have themselves 'clearly and unmistakably agreed' that the arbitrator should decide whether an issue is arbitrable, the Supreme Court has held that

this issue is to be decided by the arbitrator." Awuah v. Coverall N. Am., Inc., 554 F.3d 7, 10 (1st Cir. 2009).

In this case, Visibility and GEC Alsthom agreed that "[a]ny dispute" between them would be "governed and settled by binding arbitration in accordance with the Expedited Commercial Arbitration Rules of the American Arbitration Association." (Saint Decl., Ex. A at Addendum A ¶ 3). Rule R-7(a) of those Rules provides that "[t]he arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope or validity of the arbitration agreement." AAA Rule R-7(a).[3] Therefore, Visibility agreed to submit questions of arbitrability, including questions regarding the validity of the agreement to arbitrate, to the arbitrator. See Awuah, 554 F.3d at 11 (finding that Rule R-7(a) "is about as 'clear and unmistakable' as language can get" for purposes of showing that parties agreed to have questions of arbitrability decided by an arbitrator); Apollo Computer, Inc., 886 F.2d at 473 (where arbitration agreement incorporated rules authorizing arbitrator to determine his own jurisdiction over challenges to the validity of the arbitration agreement, it was up to arbitrator to decide whether a valid arbitration agreement existed between parties to the litigation).

---

[3] The Commercial Arbitration Rules of the American Arbitration Association ("AAA") are attached as Exhibit A to Schilling Robotics' Reply Memorandum (Docket No. 28). The expedited procedures included therein do not alter the application of Rule R-7(a). See AAA Rule R-1(b) ("The Expedited Procedures shall be applied as described in Sections E-1 through E-10 of these rules, in addition to any other portion of these rules that is not in conflict with the Expedited Procedures").

The question remaining – whether Alstom and Schilling Robotics can compel Visibility to arbitrate the issue of arbitrability even though neither of the defendants was a signatory to the Agreement containing the arbitration clause – has been squarely addressed by the First Circuit in Apollo Computer, Inc. v. Berg.  In that case, the court considered whether the plaintiff, Apollo Computer, Inc. ("Apollo"), a signatory to a contract with a company called Dicoscan Distributed Computing Scandinavia AB ("Dico"), could be compelled to arbitrate by the defendants, who had been assigned Dico's rights under the contract.  Apollo Computer, Inc., 886 F.2d at 470-71.  The contract contained an arbitration clause pursuant to which the parties agreed to submit issues of arbitrability, including issues concerning the existence or validity of the arbitration agreement, to the arbitrator.  See id. at 472-73.  It also contained a nonassignment clause, which provided that the contract could not be assigned by Dico without the consent of the plaintiff.  Id. at 470.  As in this case, the plaintiff argued that it could not be compelled to arbitrate because there was no agreement between it and the defendants, and because the defendants were not entitled to the assignment of Dico's rights under the contract.  Id.  However, the First Circuit rejected Apollo's argument and concluded as follows:

> The relevant agreement here is the one between Apollo and Dico. The defendants claim that Dico's right to compel arbitration under that agreement has been assigned to them .... Whether the right to compel arbitration ... was validly assigned to the defendants and whether it can be enforced by them against Apollo are issues relating to the continued existence and validity of the agreement.

Id. at 473.  Because the arbitration agreement between Apollo and Dico left questions of arbitrability to the arbitrator, the court determined that "[t]he arbitrator should decide whether a valid arbitration agreement exists between Apollo and the defendants under the terms of the contract between Apollo and Dico."  Id. at 473-74.

Similarly, the relevant agreement in this case is the one between Visibility and GEC Alsthom, under which Visibility agreed to submit any disputes to the arbitrator. "Under the reasoning of *Apollo*, whether the arbitration rights under the . . . Agreement were validly [transferred to Alstom and Schilling Robotics] is an issue that pertains directly to the continued 'existence, scope or validity' of the Agreement."  Contec Corp. v. Remote Solution Co., Ltd., 398 F.3d 205, 210 (2d Cir. 2005).  As described above, that issue "is within the jurisdiction of the arbitrator pursuant to AAA Rule R-7(a) as incorporated into the . . . Agreement" between Visibility and GEC Alsthom.  Id.[4]

### Relationship Between Plaintiff's Claims and the Agreement

Visibility argues that the defendants have no right to invoke the arbitration clause in any case because its claims do not depend upon the Agreement, and Visibility can

---

[4] The Contec court also held that with respect to the parties who might be sent to arbitration, "a court must first determine whether the parties have a sufficient relationship to each other and to the rights created under the agreement."  Contec Corp., 398 F.3d at 209.  Assuming, arguendo, that the First Circuit requires such an initial showing, the defendants have satisfied this requirement.  Given that Visibility did business with both of the defendants pursuant to the terms of the Agreement, and "the dispute at issue arose because the parties apparently continued to conduct themselves as subject to the [Agreement] regardless of change in corporation form[,]" "a sufficient relationship existed between [the parties] to permit the [defendants] to compel arbitration even if, in the end, an arbitrator were to determine that the dispute itself is not arbitrable because [the defendants] cannot claim rights under the [Agreement]."  Id.

prove its claims without any reference to the Agreement.  (Pl. Opp. Mem. at 8-10).  Even in cases where parties have delegated questions of arbitrability to the arbitrator, such a delegation is not unlimited.  "A dispute that plainly has nothing to do with the subject matter of an arbitration agreement . . . would not give the arbitrator the authority to decide the arbitrability of this wholly unrelated claim."  Turi v. Main St. Adoption Servs., LLP, 633 F.3d 496, 507 (6th Cir. 2011).  Therefore, the claims must be "at least *arguably* covered by the agreement" to arbitrate.  Id. at 511.  A review of Visibility's complaint in the instant case demonstrates that its claims do depend upon the Agreement, and that therefore, the arbitration clause contained therein "at least arguably" applies to the present dispute.

Visibility contends that its copyright infringement claim against the defendants is unrelated to its Agreement with GEC Alsthom because "[i]t simply asserts that a license was required to use the Software, and Defendants used the Software without obtaining a license."  (Pl. Opp. Mem. at 8).  Visibility's argument is inconsistent with the complaint, which is replete with references to the Agreement.  For example, but without limitation, the complaint contains allegations regarding limitations to the transferability of rights and obligations under the Agreement, as well as allegations regarding Visibility's lack of knowledge or consent to the assignment of rights under the Agreement to the defendants.  (See Compl. ¶¶ 10-26).  These allegations, which provide the factual basis for Visibility's infringement claim, belie Visibility's assertion that its infringement claims do not depend upon the Agreement.  Rather, they illustrate that the question whether the defendants' use

of the Software was unlawful depends upon whether or not the defendants legally acquired GEC Alsthom's rights under the licensing Agreement. Where, as here, the merits of the plaintiff's infringement claim, as well as the defendants' defense, "turn solely on the construction of the parties' contract rights" under an agreement containing an arbitration clause, the matter is appropriately referred to arbitration. See 1Mage Software, Inc. v. The Reynolds & Reynolds Co., 273 F. Supp. 2d 1168, 1173 (D. Colo. 2003) (concluding that copyright infringement claim was subject to arbitration where rights and obligations governing resolution of whether defendant's continuing use of software was lawful or not arose under agreement containing arbitration clause), aff'd 459 F.3d 1044 (10th Cir. 2006).

Visibility's assertion that its tortious interference claim is unrelated to the non-solicitation provision of the Agreement is similarly unpersuasive. As described above, Visibility specifically alleges, in support of its claim, that Schilling Robotics "knew or should have known that the Agreement contained a clause prohibiting parties to the Agreement from soliciting or hiring any of each other's employees associated with work related to the subject matter of the Agreement[,]" but "[d]espite this knowledge, Schilling Robotics recruited Mayo to end his employment with Visibility and to instead work for Schilling Robotics." (Compl. ¶¶ 43-44). Thus, Visibility's attempt to divorce its tortious interference claim from the Agreement is undermined by its own allegations.

As the First Circuit has instructed, "'[a]n order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration

clause is not susceptible of an interpretation that covers the asserted dispute.'" Municipality of San Juan v. Corporacion Para El Fomento Economico De La Ciudad Capital, 415 F.3d 145, 149 (1st Cir. 2005) (quoting AT & T Techs., Inc. v. Communications Workers, 475 U.S. 643, 650, 106 S. Ct. 1415, 1419, 89 L. Ed. 2d 648 (1986)). Because Visibility's claims do depend upon the software licensing Agreement, and are "at least *arguably*" encompassed by the arbitration clause of that Agreement, it is up to the arbitrator to determine the arbitrability of those claims.[5]  See Turi, 633 F.3d at 511.

### B.     Disposition of the Litigation

The defendants argue that because Visibility's claims are subject to arbitration, this court lacks jurisdiction over the matter and should dismiss the complaint. In the alternative, the defendants have asked for a stay of the action pending arbitration pursuant to Section 3 of the FAA.[6] (Schilling Robotics Mem. at 9-10; Alstom Mem. at 6-7).  As detailed above, the issue whether Visibility's claims are arbitrable is a matter for the arbitrator to decide.  If the arbitrator determines that there is no valid agreement between

---

[5] Because this court finds that Visibility's tortious interference claim is related to the Agreement and is arguably encompassed by the arbitration clause, it is unnecessary to address Schilling Robotics' argument that the claim should be dismissed on the merits for failure to allege facts showing that the defendant acted with an improper motive or means.  (See Schilling Robotics' Reply Mem. (Docket No. 28) at 1-4).

[6] Section 3 of the FAA provides: "If any suit or proceeding be brought in any court of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with such arbitration." 9 U.S.C. § 3.

Visibility and the defendants, the matter will be returned to this court for consideration on the merits. Accordingly, the defendants' request for dismissal is premature. The proceedings will be stayed pending arbitration. See Boateng v. Gen. Dynamics Corp., 473 F. Supp. 2d 241, 252 (D. Mass. 2007) (electing to stay rather than dismiss proceedings "given the possibility that the arbitrator may conclude that arbitration was in fact waived, and therefore may return the case to this Court"). However, nothing herein shall preclude the defendants from filing a new motion to dismiss if the arbitrator finds that both of Visibility's claims are arbitrable. See Dialysis Access Ctr., LLC v. RMS Lifeline, Inc., 638 F.3d 367, 372 (1st Cir. 2011) ("in this circuit a district court can, in its discretion, choose to dismiss the law suit, if all claims asserted in the case are found arbitrable" (quotations and citations omitted)).

## IV.  CONCLUSION

For all the reasons detailed herein, the defendants' motions to compel arbitration (Docket Nos. 14 and 19) are ALLOWED. Because there is a possibility that the matter will be returned to this court for consideration on the merits, the case will be stayed pending a decision by the arbitrator as to the arbitrability of the dispute. However, nothing herein shall preclude the defendants from filing a new motion to dismiss if the arbitrator finds that Visibility's claims are arbitrable. The parties shall file a joint report with the court, by **December 30, 2011**, describing the status of the arbitration.

/ s / Judith Gail Dein

/s/ Judith Gail Dein
Judith Gail Dein
United States Magistrate Judge